**SOONER PIPE & SUPPLY CORPORATION,**
Plaintiff in Error,

v.

**Theodore A. REHM et al., Defendants in Error.**

No. 41352.

Supreme Court of Oklahoma.

Nov. 26, 1968.

Max G. Cohen, B. Hayden Crawford, Robert S. Rizley, Tulsa, for plaintiff in error.

Frederick S. Nelson, Charles A. Whitebook, Tulsa, John B. Durfee, Don Hampton, Pawhuska, for defendants in error.

BERRY, Justice:

The principal issue involves propriety of the trial court's action in sustaining joint demurrers to evidence of plaintiff in error, hereafter called Sooner, for establishment and foreclosure of a materialmen's lien asserted under a cross-petition.

Prior to commencement, and at all times pertinent to this action, B. B. Singer d/b/a Singer Oil Company owned an undivided 35% working interest in an Osage County oil operation referred to as the Lynn Lease. Numerous non-residents owned undivided fractional interests in the property, which was operated by Singer with active assistance of her husband. At the same time Singer also was operating the Long and Stuart leases in the area.

One Rehm, owner of 27.5% undivided working interest, orginally filed this action against Singer and all other interest holders, asking for partition, dissolution of an alleged joint venture and other equitable relief. Sooner and Oklahoma Fracturing Services, Inc. were named as defendants by reason of lien claims theretofore filed. By appropriate order the prayers for termination of the alleged joint venture and partition of the leasehold estate were not adjudicated at

the trial. No questions relating to those features of the case are involved herein.

As against the defendants claiming liens against the Lynn Lease, the petition demanded strict proof of validity of any liens, and asked such asserted liens be adjudged invalid, or junior and inferior to rights of owners of the working interest.

Sooner answered by general denial and plea of existence of its lien on the property. The cross-petition charged the working interest owners were joint venturers and mining partners; under prior oral agreement Sooner had furnished material, equipment and supplies, between August 21, 1961, and August 31, 1962, for development and operation of Lynn Lease in amount ($11,120.43) shown by lien statement filed September 13, 1962. A further lien ($608.58) was claimed under a lien statement filed December 26, 1962, for materials furnished up to November 15, 1962. Sooner asked judgment against all working interest owners, adjudication of existence, validity and priority of the asserted liens, foreclosure of same against the leasehold estate, and $2,250.00 attorneys' fees.

The claim of Oklahoma Fracturing Services, Inc., asserted in a separate action against the same defendants and property, was consolidated with the present action. Although no part of this appeal, the briefs advise us the asserted claim and lien were established, in rem judgment rendered and foreclosure of the lien ordered.

Defendant Singer, and other interest holders, answered denying Sooner's allegations as to existence of a joint venture or mining partnership, or existence of any oral agreement with Sooner for furnishing of equipment and supplies. Defendants alleged any purchases from Sooner were made individually by Rehm or Singer, and denied Sooner's entitlement to, or right of foreclosure of, any lien. Further, any materials sold and delivered to Lynn Lease were purchases by and upon the individual credit of the operator (Singer) and were not furnished pursuant to any contract. And, the purported liens were void because upon their face it appeared same had not been filed within 4 months of the dates of respective purchases.

Separate pleadings filed by various interest holders raised substantially the same issues as Singer's original answer. Reply to the answer generally denied all matters therein raised. By agreement the cause was tried to the court upon petition of Oklahoma Fracturing Services, Inc. and Sooner's cross-petition.

At the close of Sooner's evidence the trial court sustained demurrers thereto and denied the claimed liens. The court then rendered judgment for the amount ($10,734.10) determined to be due after adjustment of credits, disallowance of certain items and interest claimed by Sooner on the account. Upon stipulation as to evidence of what would be a reasonable attorneys' fee the court entered judgment against Sooner for $2,250.00 attorneys' fees, to be divided between counsel for different defendants.

The appeal from the court's order and judgment advances two contentions. The first urges reversible error in sustaining defendants' joint demurrers in view of the asserted sufficiency of the evidence to establish Sooner's right to a materialmen's lien. The second contention is directed against allowance of attorneys' fees, upon the ground the court erred in denying the lien claim. Both contentions, and the arguments offered in support, involve matters relating to sufficiency of the evidence.

The oil producing Lynn Lease had been operated for several years by B. B. Singer, assisted by her husband. During operations the operator purchased material, equipment and supplies from Sooner upon an open credit account carried in Singer's individual name. During the period involved Singer was operating other leases, all of which were carried in the one account without segregation as to lease for which furnished.

Sooner sought to establish its claims by the testimony of its comptroller, and an officer who served as Vice President and Secretary of the corporation. This testimony, together with billings and invoices

for purchases kept in the regular course of business, comprised the evidence which assertedly shows existence and verity of the claimed liens filed against the Lynn Lease prior to commencement of this action. This evidence, coupled with matters established conclusively by cross-examination, disclosed business operations were conducted in the manner now summarized.

The invoices showed many purchases over the period involved, both by the actual operator of the lease and different employees. Some indicated the merchandise was for the Lynn Lease, while others itemized purchases simply charged to the B. B. Singer open account without any lease designation. Credit memoranda were credited back to this account without designation or regard to the lease source of material returned. The Singer open account was charged with 7% simple interest monthly on the past due balance.

Sooner extended open account credit after investigation of financial responsibility. Accounts were allowed to remain open so long as there was a possibility of collection. Upon determining an account was uncollectible the comptroller, or those under his direction, went through invoices on accounts and separated those having some notation connecting the charge with a particular lease. Invoices thus identified provided bases for the liens filed, without regard to time limit of the purchase, or inquiry to establish whether merchandise actually went to the particular lease against which it had been invoiced. Sooner's statements showed the open account included charges for merchandise furnished to all the Singer operated leases. Payments made by Singer were credited in discriminately to the oldest invoices in the account, without concern as to the particular lease for which a purchase had been made. In one instance Singer remitted $3,000.00 for application to the Lynn Lease account. Despite specific directions Sooner credited payment to the open account. After it was determined a lien should be filed, and the comptroller had separated invoices believed to represent merchandise furnished the Lynn Lease, the billing system was changed and Sooner began carrying a "lease account" rather than the B. B. Singer open account.

Argument in support of the first proposition, urging sufficiency of the evidence to establish the liens, is that records of sales to the Lynn Lease were kept in the usual course of business, and testimony based upon these original records of transactions identified and proved the unpaid balance of the lienable account. Thus, because the original record constituted competent and prima facie evidence to prove the purchase and use of the materials for operation of the Lynn Lease for benefit of all interest owners, resulted in liability of each owner under the statutory lien thus created. As authority for this argument and the asserted conclusion Sooner relies upon our holdings in Oil Field Operating Co. v. Eureka Tool Co., 181 Okl. 393, 74 P.2d 377, and Hemisphere Oil & Gas Co. v. Oil Well Supply Co., 104 Okl. 83, 230 P. 245.

In each case cited the principal issue involved admissibility of entries in books of account kept in usual course of business. In Hemisphere, supra, the question concerned admissibility of counter tickets for sales, which ultimately were forwarded to another office and entered in course of bookkeeping procedures. The rule stated was that entries in the usual course of business meant the usual course of business of the company whose accounts were questioned, without regard to skill or lack of skill in keeping the accounts involved. A similar issue was decided in Eureka Tool Company, supra.

■ For two reasons these cases do not support Sooner's position. First, the question of admissibility was not involved, since the trial court admitted Sooner's records of all transactions involved. As noted by defendants, such evidence provided basis for the court's judgment in Sooner's favor against B. B. Singer for the indebtedness shown by this evidence.

■ Secondly, the records kept in the usual course of Sooner's transactions with Singer do not establish existence of any

contract to furnish equipment and supplies to the Lynn Lease. Neither do these records conclusively establish sale, delivery and use of the merchandise upon the lease in question. These elements are prerequisite to establishment of the lien extended under 42 O.S.1961, § 144. The testimony and records here relied upon established nothing other than Sooner's sale of merchandise upon credit extended Singer under an open account. See Helmerich & Payne, Inc. v. American Nat. Bank, etc., 195 Okl. 318, 157 P.2d 168.

Under this proposition Sooner further urges error by reason of the trial court's sustaining objection to a so-called offer of proof. Although too long and involved to permit quotation defendants' objections, based upon grounds of failure to show nature and availability of evidence, attempt to impeach prior witnesses and the books and records already admitted into evidence, and because the offer consisted of conclusions, properly were sustained.

Examination of the attempted offer of proof reflects same was objectionable, both as to form and because so broad as to include irrelevant, inadmissible matters, self-serving declarations and conclusions of fact rather than evidence. Much of the offered evidence clearly was inadmissible, and no separate offer was made of evidence that might have been proper. The trial court was not required to pick out admissible items of evidence from the inadmissible factual recitations contained in the offer of proof, but may reject the entire offer. Lynch v. M. K. T. Railroad Co., 333 Mo. 89, 61 S.W. 2d 918, 923.

Sooner further contends the court erred in denying claimed lien rights and awarding defendants' counsel attorneys' fees. The cross-petition sought to establish and foreclose the asserted materialmen's lien. The trial court found and determined no lien existed. The statute, 42 O.S.1961, § 176, provides in such actions the party for whom judgment is rendered is entitled to recover reasonable attorneys' fees which is taxed as costs of the action. The defendants

prevailed against Sooner's lien claim and the court properly fixed a reasonable fee for their attorneys' services. See Miller v. Liberty Nat. Bank & Trust Co., Okl., 391 P.2d 269, and authorities therein cited.

Judgment affirmed.

All Justices concur.